997 So.2d 51 (2008)
Edward COLLINS
v.
STATE FARM INSURANCE COMPANY and Reggie Glass.
No. 2008-CA-0790.
Court of Appeal of Louisiana, Fourth Circuit.
October 14, 2008.
Rehearing Denied December 10, 2008.
*52 Rodney Kelp Littlefield, Martin E. Regan, Jr. & Associates, P.L.C., New Orleans, LA, for Plaintiff/Appellant.
Burt K. Carnahan, Charles R. Rumbley, Lobman, Carnahan, Batt, Angelle & Nader, New Orleans, LA, for Defendant/Appellee, State Farm Fire & Casualty Company.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
Edward Collins prosecutes this appeal from the trial court's summary judgment dismissing his suit against State Farm Fire and Casualty Company (State Farm). Mr. Collins filed suit in Civil District Court for the Parish of Orleans (CDC) against State Farm[1], and its alleged claims representative, Reggie Glass. State Farm issued a homeowner's property insurance policy on Mr. Collins' home, located at 7508 Lafourche Street in New Orleans. Mr. Collins alleges that in mid-August of 2005, Mr. Glass informed him that the home was fully covered with flood and homeowner's insurance policies. Mr. Collins filed a timely claim with State Farm for damages sustained by his home on August 29, 2005, in the aftermath of the levee failures associated with Hurricane Katrina. Subsequently, State Farm denied the claim and Mr. Collins alleged that he was informed that State Farm dropped his homeowner's policy without prior written notice.
Mr. Collins claimed against his insurer for the full value of his property pursuant to La.R.S. 22:695, the Louisiana Valued Policy Clause. He sought damages for State Farm's allegedly arbitrary and capricious failure to pay or timely initiate loss adjustment pursuant to La.R.S. 22:658. He also sought damages for State Farm's alleged breach of its duty of good faith and fair dealing to adjust the claim fairly and promptly, and to make reasonable efforts to settle the claim, pursuant to La.R.S. 22:1220.
Mr. Collins claimed that Mr. Glass is individually liable for his failure to adjust the claim in good faith and failure to disclose material information to Mr. Collins, thereby causing further delay and damage.
By Supplemental and Amending Petition, Mr. Collins added Hibernia Mortgage Company/Capital One[2] (CONA) as a defendant, claiming that it failed to inform him that his coverage was not in effect at the time of the hurricane.
State Farm removed the suit to United States District Court for the Eastern District of Louisiana, case No.XXXX-XXXX, Division "G-11", claiming that removal was authorized pursuant to 28 U.S.C. § 1367, 28 U.S.C. § 1369, and 28 U.S.C. § 1441(e)(1)(A) and (B), asserting that Mr. Glass fraudulently was named as a defendant in order to defeat diversity jurisdiction under 28 U.S.C. § 1332.
State Farm filed an answer to the petition in federal court, claiming that: (1) the petition failed to state a cause of action; (2) if a contract of insurance existed between the parties, State Farm pled its *53 exclusions, terms, conditions and limitations specifically in their entirety, including the water damage exclusion; (3) the damage was not caused by a covered peril; (4) the Louisiana Valued Policy Law does not apply to this case; (5) to the extent that Mr. Collins has received any payment from State Farm, that payment was appropriate; (6) the amendments to La.R.S. 22:658 and La.R.S. 22:1220 do not have retroactive effect; (7) State Farm reserved the right to any credits or setoffs to which it may be entitled; (8) Mr. Collins was not damaged by any alleged wrongdoing on the part of State Farm, its agents or representatives; (9) Mr. Collins did not have a homeowner's policy of insurance issued by State Farm covering his residence at 7508 Lafourche Street, in effect at the time of the loss; (10) alternatively, Mr. Collins failed to take reasonable steps to mitigate his damages, if any. State Farm filed a supplemental answer denying the allegations contained in Mr. Collins' Supplemental and Amending Petition.
CONA filed an answer to the petition in federal court, generally denying Mr. Collins' allegations.
State Farm filed a Motion for Summary Judgment in federal court, contending that it determined not to renew coverage on the Collins home, and provided Mr. Collins in early 2005 with notice of that fact in accordance with Louisiana law[3].
CONA filed a Motion for Summary Judgment in CDC, contending that it did not hold Mr. Collins' mortgage on the date his insurance is alleged to have lapsed or on the date his property allegedly sustained hurricane damage. In support of its motion, CONA supplied, inter alia, a copy of the notice sent to Mr. Collins on February 9, 2005 advising him that CONA's predecessor, Hibernia Corporation/Hibernia National Bank, would no longer service his mortgage and that, from March 1, 2005 onward, the mortgage would be serviced by CitiMortgage, Inc. The trial court granted the motion on September 28, 2007, dismissing CONA with prejudice, each party to bear his or its own costs.[4]
In support of its Motion for Summary Judgment, State Farm provided the court with a copy of its letter of April 27, 2005, in which it advised that "insurance coverage is no longer acceptable to State Farm Fire and Casualty Company because the condition of your roof is increasing the chance of wind and water loss." The letter noted the policy's expiration date of May 30, 2005 at 12:01 a.m. State Farm also provided a copy of its letters to Hibernia National Bank and Sun Finance Company, Inc. (Sun) under the same date advising the mortgagees that the policy would cease as of May 30, 2005.
State Farm also provided the affidavit of Ann French, its Underwriting Team Manager, who deposed that State Farm on May 30, 1991 issued policy no. 18-43-2712-2 covering property located at 7508 Lafourche Street, effective until May 30, 2005. Furthermore, in January of 2000, Mr. Collins filed a claim and was paid for the repair and/or replacement of the home's roof. During an inspection of the property conducted on September 16, 2004, in connection with another claim by Mr. Collins, it was discovered that he had not made the required roof repairs for which he had been paid in 2000. That failure to repair the roof was the basis of State Farm's decision not to renew the policy upon its May 30, 2005 expiration. Ms. French also averred that on April 27, *54 2005, State Farm mailed notice of non-renewal to Mr. Collins at the address shown in the policy, and to the two mortgage holders, noting an expiration of coverage on May 30, 2005. Ms. French concluded that on or about the date of loss, August 29, 2005, the State Farm policy was not in effect and no coverage is available for any loss sustained by Mr. Collins in connection with Hurricane Katrina.
State Farm also submitted the affidavit of Reggie Glass, who averred that he is a self-employed, independent agent of the State Farm Insurance Companies and has never been a claims representative for any of those companies. Mr. Glass noted that he was familiar with the State Farm policy issued to Mr. Collins on May 30, 2004 and in effect until May 30, 2005. He denied having represented to Mr. Collins in the month prior to Hurricane Katrina that he was fully insured under his homeowner's policy, and denied having discussed that policy when Mr. Collins visited his office in the month prior to the hurricane.
Mr. Glass also filed a Motion for Summary Judgment in the federal court, filing in support his affidavit and that of Ms. French, together with copies of the non-renewal letters sent to Mr. Collins and the mortgagees on April 27, 2005.
In opposition to the Motions for Summary Judgment, Mr. Collins provided a copy of a letter from Tammie Cavanagh, the manager of Sun's Harvey, Louisiana office. The letter states, in pertinent part:
Our records indicate we did not receive a renewal notice for Mr. Collins' homeowner insurance policy through State Farm for the period of May 30, 2005-May 30, 2006. We also did not receive a cancellation notice in 2005.
Mr. Collins also provided the affidavit of Minnie Ledet, a Sun employee, who averred in pertinent part that:
(1) Sun is a mortgagee on Mr. Collins' home;
(2) She has access to all records and documents pertaining to the mortgage;
(3) Sun never received a notice of non-renewal nor termination of coverage regarding the Collins property; and
(4) Had such documents been received, she would have access to and/or a copy of such documents in Mr. Collins' records.
Mr. Collins also provided an unverified copy of a letter from David Robinson, Underwriting Operations Supervisor for State Farm Fire and Casualty Company to Mr. Collins, showing copies to Mr. Glass, Hibernia National Bank and Sun. The letter, dated May 25, 2004, provides in pertinent part:
Please disregard our letter sent on April 27, 2004. After receiving additional information, we are reinstating your policy.
Your policy listed above [XX-XX-XXXX-X] is hereby reinstated and coverage will continue in force subject to its printed terms and conditions.
We apologize for any inconvenience you may have experienced. We look forward to serving you in the future.
Mr. Collins' opposition to State Farm's Motion for Summary Judgment refers to his affidavit wherein he avers:
(1) He never received a notice of non-renewal from State Farm regarding his homeowner's policy No. 18-43-2712-2;
(2) He continued to pay insurance premiums through his mortgage company for the said policy;
(3) He suffered complete loss of his home as a result of Hurricane Katrina;

*55 (4) When he requested information from State Farm concerning his policy, he received a letter signed by David Robinson and originating from State Farm's Tulsa Operations Center in Tulsa, Oklahoma.
On April 30, 2007, the federal court remanded the matter to CDC, finding that Mr. Glass and Mr. Collins were both citizens of Louisiana, and that Mr. Collins filed suit against Mr. Glass for negligent misrepresentation within a year of its discovery. The federal district judge also denied Mr. Glass's Motion for Summary Judgment and dismissed as moot State Farm's and CONA's Motions for Summary Judgment. The federal court pleadings were made a part of the CDC record.[5]
On remand, and in connection with its Motion for Summary Judgment, State Farm supplied the affidavit of David Robinson, former State Farm Underwriting Team Manager. Mr. Robinson corroborated the statements contained in Ms. French's affidavit concerning the reason why State Farm determined not to renew Mr. Collins' insurance policy following the September 16, 2004 inspection of the property. He also stated that as part of his duties and in the ordinary course of business on behalf of his employer, State Farm, he approved the notice of non-renewal under his signature and caused it to be mailed to Mr. Collins on April 27, 2005, at the address listed in the policy. The notice indicated the policy's coverage would expire on May 30, 2005. Furthermore, as part of his duties, Mr. Robinson approved mailing of the notice of non-renewal to the first and second mortgage holders on the property. He also stated that he is familiar with a letter mailed to Mr. Collins on March 15, 2006 from State Farm's Tulsa Operations Center, noting that between April 27, 2005 and March 15, 2006, State Farm's Monroe Operations Center was relocated to Tulsa, and that relocation is reflected in the change of address.
Following a hearing held on April 25, 2008, the trial court on May 6, 2008, granted State Farm's Motion for Summary Judgment, dismissing Mr. Collins' claim against the insurer with prejudice. Mr. Collins appeals from that judgment.
We review summary judgments de novo. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A. (2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the mover. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.Civ.Pro. art. 967; Townley v. City of *56 Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. See, Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party.
In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Anaya v. Legg Mason Wood Walker, Inc., 07-0654 (La.App. 4 Cir. 5/14/08), 985 So.2d 281, citing Coto v. J. Ray McDermott, S.A., 99-1866, p. 4 (La.App. 4 Cir. 10/25/00), 772 So.2d 828, 830.
A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 91-2450 (La.App. 4 Cir. 12/15/92), 611 So.2d 691, 699.
Mr. Collins assigns as error that State Farm did not present proper evidence, under La.R.S. 22:636 and La.R.S. 22:636.1, that it mailed notice of non-renewal of its policy No. 18-43-2712-2 to him.
La.R.S. 22:636, referring to policy cancellation, provides in pertinent part:
A. Cancellation by the insurer of any policy which by its terms is cancelable at the option of the insurer, . . . , may be effected as to any interest only upon compliance with either or both of the following:
(1)(a) Written notice of such cancellation must be actually delivered or mailed to the insured . . . not less than thirty days prior to the effective date of the cancellation. . . .
(2) Like notice must also be so delivered or mailed to each mortgagee,. . . or other known person shown by the policy to have an interest in any loss which may occur thereunder. For purposes of this Paragraph "delivered" includes electronic transmittal, facsimile, or personal delivery.
* * *
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. . . .
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
* * *
La.R.S. 22:636.1, referring to non-renewal of a policy, provides in pertinent part:
E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least *57 twenty days advance notice of its intention not to renew.
* * *
F. Proof of mailing of notice of . . . intention not to renew . . . to the named insured at the address shown in the policy, shall be sufficient proof of notice.
There is a strong public policy requiring prior notice of the cancellation of an insurance policy in order that an insured might be afforded sufficient time to obtain new coverage. Rachuba v. Hickerson, 5688 (La.App. 4 Cir. 2/12/87), 503 So.2d 570, 571, citing Broadway v. All-Star Insurance Corporation, 52987 (La.9/24/73), 285 So.2d 536. The insurer must comply strictly with the notice statutorily required by La.R.S. 22:636.1. Id.
Applying that public policy, the Louisiana Supreme Court in the Broadway case held that "mailed to the insured" in La. R.S. 22:636 "connotes a completed process, the transmission of the notice through the United States Mail. . . . An interpretation which permits a deposit in the mails to conclusively terminate coverage undermines the purpose of notice." Broadway v. All-Star Insurance Corp. 285 So.2d at 539.[6]
La.R.S. 22:636.1 F provides that proof of mailing of notice of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice. This language differs from the language of La.R.S. 22:636. Nonetheless, the statutory presumption of notice provided for in the non-renewal statute, like that in the cancellation statute, has been held to be rebuttable. 15 La.Civ.L.Treatise, Insurance Law & Practice, § 224 (3d ed.), citing Ray v. Associated Indemnity Corporation, supra. This presumption can be overcome by affirmative proof of non-delivery. See, Beasley v. Puglise, 1466 and 1756 (La.App. 4 Cir. 6/14/84), 454 So.2d 1125[7]; Glynn v. Diamond State Ins., supra.
In Pincus v. Pumilia, 12400 (La.App. 4 Cir. 3/9/82), 412 So.2d 151, 152, this Court affirmed the trial court's finding that the presumption of notice that a taxi driver was excluded from coverage was rebutted by the driver's testimony at trial that he did not receive the notice of termination of coverage and continued to pay premiums after the date of the purported mailing of notice.
Similarly, in Automobile Club Ins. Co. v. Aaron, 5619 (La.App. 4 Cir. 6/12/74), 296 So.2d 464, this Court found that the insured adequately showed that neither he nor his lien holder received the insurer's notice of cancellation.
In Norred v. The Employers Fire Insurance Company, 16650 (La.App. 2 Cir. 12/5/84), 460 So.2d 1147, the appellate court reversed a trial court finding of adequate notice of intention not to renew the plaintiff's policy. The insurer produced a certificate of mailing showing that the letter was deposited with the post office. The insurance agency received a copy of the notice by mail. The plaintiff testified *58 that he did not receive the notice. The appellate court held that while the trial court correctly found that the insurer convincingly proved the mailing of the notice of intent not to renew, it should have considered the plaintiff's affirmative proof of non-delivery.
State Farm relies on this Court's opinion in Talley v. First Georgia Underwriters Co., 91-1014 (La.App. 4 Cir. 3/26/92), 596 So.2d 408. In that case, we affirmed the trial court's summary judgment dismissing plaintiff's claim for damages under a fire insurance policy issued by the defendant insurer. The insurer mailed a notice of cancellation effective August 9, 1981, to the plaintiff at the address shown on the policy. When that letter was returned "undelivered" by the postal service, the insurer had the letter mailed to the plaintiff at the insured location. That letter was not returned. On November 3, 1981, the plaintiff met with his insurance agents and was shown a copy of the cancellation notice. The agents advised the plaintiff that, in its present condition, the formerly insured premises did not meet underwriting requirements, and that they would inspect the property after he had completed its remodeling to determine whether a new policy could be purchased. In March of 1982, the plaintiff advised his agent that the house had burned to the ground, and asked the status of his homeowners' insurance. When advised that the policy had been cancelled, the plaintiff asked his agent to "back date" a policy to cover the house that had burned down. The agent refused the request. On appeal, the plaintiff argued that he had not received the notice of cancellation, relying on his affidavit to that effect filed in the trial court in opposition to the insurer's Motion for Summary Judgment. This Court held that neither La.R.S. 22:636 nor La.R.S. 22:636.1 requires proof of receipt of the notice, but only of proper mailing, citing Harang v. Sparacino, 4555 (La.App. 4 Cir. 12/6/71), 257 So.2d 785, a case decided prior to the Louisiana Supreme Court's opinion in the Broadway case. The Talley opinion does not discuss the effect, vel non, of the Broadway opinion. Talley is further distinguishable from the instant case because the plaintiff had actual knowledge of the cancellation through his pre-loss meeting with his agent, which took place after the cancellation and at which he was shown the notice of cancellation.
The following language from the Supreme Court's opinion in Ray v. Associated Indemnity Corporation, 373 So.2d at 169-70, applying the summary judgment standard, supports our conclusion that State Farm's reliance on Talley is misplaced:
In arguing for the propriety of summary judgment on this issue, [the insurer] relies on the case of Cuccia v. Allstate Ins. Co., 250 So.2d 60 (La.App.1971[sic]), in which the Fourth Circuit held a summary judgment proper even though the insured denied having received a cancellation notice. However, the insurance company failed to note that this court reversed the Fourth Circuit's decision, Cuccia v. Allstate Ins. Co., 262 La. 545, 263 So.2d 884 (1972). In that case we agreed that the insurance company presented prima facie evidence that the notice was mailed according to the statute's requirements, but concluded that the presumption raised was rebuttable by the insured who adamantly contended that he had not received the notice. Therefore, the court decided that Cuccia was entitled to his day in court.
Although the instant case does not involve a cancellation notice, the rationale of Cuccia, that disputed facts should not be decided by summary judgment, is equally applicable to the case at hand. Ms. LaCour may not persuade the trier *59 of fact that she indeed did not receive a premium notice, but the law affords her the opportunity to do so.
For the reasons assigned, the ruling of the district court granting the motion for summary judgment is reversed, and the case is remanded to the district court for further proceedings consistent with the views expressed herein; the defendant [insurer] is cast for costs.
Applying the burden of proof standard for summary judgments together with the controlling jurisprudence of the Louisiana Supreme Court, we are compelled to conclude that while State Farm in this case made a prima facie showing that it mailed notice of its intention not to renew the policy to the insured and the mortgagees, the sworn affidavits of the insured and of a Sun Financing representative denying receipt of that notice create a genuine issue of material fact. The Louisiana Supreme Court's decisions in the Broadway and Ray cases make it clear that actual receipt of notice by the insured is material to the determination of whether the non-renewal of a policy is effective. We express no opinion as to whether or not the insurer may be able to prove at trial that Mr. Collins received the notice it claims it mailed to him. It is clear at this point in the litigation, however, that the conflict created by the contradictory affidavits supplied by the insurer on the one hand and by Mr. Collins and Sun on the other hand is inappropriate for resolution by summary judgment.
For the foregoing reasons, we vacate the summary judgment of May 6, 2008 and remand this case to the trial court for further proceedings consistent with this opinion.
REMANDED.
TOBIAS, J., dissents and assigns reasons.
BELSOME, J., dissents with reasons.
TOBIAS, J., dissenting and assigning reasons.
I respectfully dissent. I would affirm the judgment of the trial court for the following reasons.
As established by the evidence attached to its motion for summary judgment, State Farm Fire and Casualty Company ("State Farm") mailed a notice of non-renewal, as distinguished from a notice of cancellation, to Mr. Collins on 27 April 2005, advising him that it was not renewing his policy on 7508 Lafourche Street, New Orleans, when it expired on 30 May 2005. On that same date, State Farm mailed a notice of non-renewal to Mr. Collins' mortgagees as reflected in the policy of insurance.
I first acknowledge that the Louisiana statutes relative to the cancellation and/or non-renewal of a policy of homeowner's insurance are less than clear. I quote in their entirety those statutes in Title 22 that have applicability.[1]

*60 § 635. Renewal of policy; increase in premiums prohibited
A. Any insurance policy terminating by its terms at a specified expiration date and not otherwise renewable may be renewed or extended at the option of the insurer and upon a currently authorized renewal form and at the premium rate then required therefor for a specific additional period or periods by a certificate or by endorsement of the policy, and without requiring the issuance of a new policy.
B. No insurer shall increase the premium charged for an automobile liability insurance policy at the time of renewal for any insured solely on the grounds that the insured's policy has lapsed provided *61 the policy is renewed within ten days after the date of termination.
§ 635.3. Homeowner's insurance; insurer's nonrenewal without cause; inclusion in insured's file prohibited
A. Whenever a policy of homeowner's insurance is not renewed by the insurer and such nonrenewal is without cause, the fact of such nonrenewal shall not be retained in the insured's file with that insurer. Such nonrenewal shall not be considered a cancellation or nonrenewal for cause. The insurer shall not utilize such nonrenewal as a reason for an increase in the insured's rate for equivalent coverage to that which was not renewed.
B. In this Section, nonrenewal "without cause" shall not include nonrenewal by the insurer for any of the following reasons:
(1) Nonrenewal at the request of the insured;
(2) Failure of the insured to pay the agreed premium;
(3) Fraud on the part of the insured; or
(4) Material misrepresentation of a material fact in application for a new policy or for renewal of an existing policy.
C. No insurer providing property, casualty, or liability insurance shall cancel or fail to renew a homeowner's policy of insurance or to increase the policy deductible that has been in effect and renewed for more than three years unless based on nonpayment of premium, fraud of the insured, a material change in the risk being insured, two or more claims within a period of three years, or if continuation of such policy endangers the solvency of the insurer. This Subsection shall not apply to an insurer that ceases writing homeowner's insurance or to policy deductibles increased for all homeowners policies in the state.
§ 636. Cancellation by insurer
A. Cancellation by the insurer of any policy which by its terms is cancelable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than thirty days prior to the effective date of the cancellation except when termination of coverage is for nonpayment of premium.
(b) Upon the written request of the named insured, the insurer shall provide to the insured in writing the reasons for cancellation of the policy. There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for cancellation as required by this Subparagraph.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder. For purposes of this Paragraph "delivered" includes electronic transmittal, facsimile, or personal delivery.
(3) Where written notice of cancellation or nonrenewal is required and the insurer elects to mail the notice, the running of the time period between the date of mailing and the effective date of termination of coverage shall commence upon the date of mailing.
(4) Any policy may be cancelled by the company at any time during the policy period for failure to pay any premium *62 when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation shall be effective. Nothing in this Code shall mandate a separate notice of lapse for nonpayment of premium of a policy defined as provided by R.S. 22:1405(G).
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
D. (1) The portion of any premium paid to the insurer on account of the policy, including unearned commission, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured, the agent of the insured, or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order.
(2) When payment is sent to the agent of the insured, the insurer shall be required to provide notice to the insured, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.
E. This Section shall not apply to temporary life insurance binders nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, nor to the contracts provided in Part XV of this Chapter.
F. No insurer shall cancel or refuse to renew any policy of group or family group health and accident insurance except for nonpayment of premium or failure to meet the requirements for being a group or family group insurance policy until sixty days after the insurer has mailed written notice of such cancellation or nonrenewal by certified mail to the policyholder. The notice shall also include the reason the policy is being cancelled.
G. (1) No insurer shall fail to renew a policy providing property or casualty insurance unless a notice of intention to not renew is mailed or delivered to the named insured at the address shown on the policy at least thirty days prior to the effective date of nonrenewal.
(2) Like notice shall also be delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder. For purposes of this Paragraph, "delivered" includes electronic transmittal, facsimile, or personal delivery.
(3) This Subsection shall not apply:
(a) To policies regulated by R.S. 22:636.1 and 636.4.
(b) If the insurer has manifested its willingness to renew the policy either through the same company or a company in the same group of companies.

*63 (c) In the case of nonpayment of the premium.
(d) If the named insured has provided written notification to the insurer of the insured's intention to not renew the policy.
(e) In cases of fraud by the insured.
H. Notice of cancellation or nonrenewal given by the insurer in accordance with this Chapter shall be deemed sufficient. The insurance producer, insurance agent, or insurance broker shall not be required to give any separate or additional notice of cancellation or nonrenewal.
§ 636.1 Automobile, property, casualty, and liability insurance policies; cancellations
A. As used in this Chapter:
(1) "Policy" means an automobile liability, automobile physical damage, or automobile collision policy, or any combination thereof, delivered or issued for delivery in this state, or any binder based on such a policy, insuring a single individual or husband and wife resident of the same household, as named insured, and under which the insured vehicles therein designated are of the following types only:
(a) A motor vehicle of the private passenger or station wagon type that is not used as a public or livery conveyance for passengers, nor rented to others; or
(b) Any other four-wheel motor vehicle with a load capacity of fifteen hundred pounds or less which is not used in the occupation, profession or business of the insured; provided, however, that this shall not apply (1) to any policy issued under an automobile assigned risk plan, or (2) to any policy insuring more than four automobiles, or (3) to any policy covering garage, automobile sales agency, repair shop, service station or public parking place operation hazards.
(2) "Automobile liability coverage" includes only coverages of bodily injury and property damage liability, medical payments and uninsured motorists coverage.
(3) "Automobile physical damage coverage" includes all coverage of loss or damage to an automobile insured under the policy except loss or damage resulting from collision or upset.
(4) "Automobile collision coverage" includes all coverage of loss or damage to an automobile insured under the policy resulting from collision or upset.
(5) "Renewal" or "to renew" means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term. However, no policy of insurance for a period of less than six months shall be issued by an insurer to any person who has been issued two or more citations for violations of R.S. 32:851 et seq. or R.S. 32:861 et seq., and any policy issued to a person receiving two or more citations shall be considered as if written for a policy period or term of six months. Any policy which is written for a term longer than one year or any policy which is renewed by an insurer shall be for the same term as the original or expired policy, or any policy with no fixed expiration date shall for the purpose of this Chapter be considered as if written for successive policy periods or terms of one year. Such a policy may be terminated at the expiration of any annual period upon giving twenty days notice of cancellation prior to such anniversary date. *64 This cancellation shall not be subject to any other provisions of this Chapter.
(6) "Nonpayment of premium" means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit.
B. (1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
(b) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under the policy has been under suspension or revocation during the policy period, or, if the policy is a renewal, during its policy period or the one hundred eighty days immediately preceding its effective date.
(c) Fraud or material misrepresentation in the presentation of a claim.
(d) Nonreceipt by the insurer of an application for insurance in which a valid binder has been issued.
(2) This Subsection shall not apply to nonrenewal or to any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy. After an insurer has paid and satisfied an insured's third physical damage claim, the modification of such insured's automobile physical damage coverage by the inclusion of a deductible not exceeding fifty dollars shall not be deemed a cancellation of the coverage or of the policy.
C. No insurer shall cancel or fail to renew a policy purely because of age. Some legitimate reason, such as physical or mental infirmity, must be specified before an insurer may cancel or refuse to renew a policy.
D. (1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.
(2) There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for cancellation as required by this Subsection.
(3)(a)(i) Payment of an initial, renewal, or installment insurance premium by the insured to an insurer or an insurance agent with a check or other negotiable instrument which is returned to the payee by the institution upon which it is drawn for insufficient funds available in the account, for lack of credit, for the reason the account is closed, for *65 stopped payment, or for any other reason shall be deemed grounds for the insurer to cancel the binder or policy from the date the premium payment was due for the initial or renewal term, whichever is applicable.
(ii) The provisions of this Paragraph shall apply to automobile liability policies and to property, casualty, and liability policies.
(b)(i) The insurance agent shall immediately, and in no case later than ten days after the agent or premium finance company has received notice of the returned check or negotiable instrument, notify the insurer of the receipt of the returned check or negotiable instrument.
(ii) The insurer shall immediately, and in no case later than ten days after the agent or premium finance company has notified the insurer, notify the named insured, by certified mail or delivering to the named insured a written notice that the policy is canceled from the date the premium payment was due. The insurer shall advise the named insured that the policy shall be reinstated effective from the date the premium payment was due for the term of the policy only if the named insured or his legal representative presents to the insurer a cashier's check or money order for the full amount of the returned check or other negotiable instrument within ten days of the date that the notice of cancellation was mailed.
(c) Upon expiration of the ten-day period, either:
(i) The insurer shall reinstate the insured's policy, from the date that the premium was due, and shall pay directly to the insurance agent all funds paid to the insurer by the insured or his legal representative to replace the dishonored check or other negotiable instrument; or
(ii) Cancellation of the policy shall remain effective, when the insured or his legal representative has failed to redeem the dishonored check or other negotiable instrument before expiration of the ten-day period.
(d)(i) Within ten days of the expiration of the ten-day notice the insurer shall return all funds paid by the insurance agent to the insurer on behalf of the insured except when an insurance premium finance company has funded an insured's policy, the insurer shall return those funds directly to the insurance premium finance company. These funds shall be returned by check or other negotiable instrument and shall not be placed on the agent's or premium finance company's account currents unless the agent or premium finance company and the insurer have agreed to other methods for handling these funds. Funds received by the insurance premium finance company in excess of the amount funded by the insurance premium finance company shall be forwarded to the insurance agent.
(ii) The original or a copy of the returned dishonored check or negotiable instrument, front and back, mailed or faxed, to the insurance company shall be proof of the returned dishonored check or negotiable instrument by the financial institution and shall be considered sufficient evidence in any future litigation.
(iii) When an insured pays the dishonored check by delivery to the agent of cash or a certified check, the agent shall notify the insurer within ten days of the payment of the dishonored check.
(e) In the event the policy has been canceled back to the date of inception or premium payment due in accordance with this Paragraph, the sixty-day periods *66 referred to in R.S. 9:3550(H) and R.S. 22:636(F) shall not apply. The funds shall be returned by the insurer by check within ten days of the expiration of the ten-day notice of cancellation.
(4)(a) In the event that an agent, broker, surplus lines insurance broker, or insurance solicitor incorrectly states the premium amount for the automobile liability policy, the insured may cancel the policy and shall be returned the initial payment of premium, including fees and costs, less the prorated cost for the period of time of coverage at the initial stated premium, including fees and costs, and may cancel the insurance coverage, without penalty or loss of coverage, for the period of time that the premium, including fees and costs, was paid.
(b) When an insurance premium finance company has funded an insured's policy and the policy is cancelled, the insurer shall return the funds directly to the insurance premium finance company. Any funds received by the insurance premium finance company in excess of the amount owed to the insurance premium finance company by the insured shall be forwarded to the insurance agent to be returned to the insured. The insurer shall not withhold any more funds from the insurance premium finance company than would otherwise be withheld from the insured. No insurer shall assess a service charge for this transaction.
E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This Subsection shall not apply:
(a) If the insurer has manifested its willingness to renew.
(b) In case of nonpayment of premium; provided that, notwithstanding the failure of an insurer to comply with this Subsection, the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.
(c) If the insurer or a company within the same group as the insurer has offered to issue a renewal policy to the named insured.
(d) If the named insured has provided written notification to the insurer of the insured's intention not to renew the policy.
(2) Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.
(3) Upon the written request of the named insured, the insurer shall provide to the insured in writing the reasons for nonrenewal of the policy. There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for nonrenewal as required by this Paragraph.
F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
G. When a policy of automobile liability insurance is cancelled, other than for nonpayment of premium, or in the event of failure to renew a policy of automobile liability insurance to which Subsection D applies, the insurer shall notify the named insured of his possible eligibility for automobile liability insurance through the automobile liability assigned risk plan. Such notice shall accompany *67 or be included in the notice of cancellation or the notice of intent not to renew.
I. There shall be no liability on the part of and no cause of action of any nature shall arise against the commissioner of insurance or against any insurer, its authorized representative, its agents, its employees, or any firm, person or corporation furnishing to the insurer information as to reasons for cancellation, for any statement made by any of them in any written notice of cancellation, or in any other communication, oral or written specifying the reasons for cancellation, or the providing of information pertaining thereto, or for statements made or evidence submitted at any hearings conducted in connection therewith.
J. Where written notice of cancellation or nonrenewal is required and the insurer elects to mail the notice, the running of the time period between the date of mailing and the effective date of termination of coverage shall commence upon the date of mailing.
K. No insurer shall cancel an automobile insurance policy written or issued for delivery in this state belonging to an insured over the age of sixty-five based upon the age of the insured provided the insured is mentally and physically capable of driving an automobile and possesses a valid Louisiana operator's license issued by the office of motor vehicles in the Louisiana Department of Public Safety and Corrections.
L. No insurer shall cancel an automobile insurance policy for any insured solely on the ground that the insured has submitted a single claim under his or her policy for damage incurred or arising from the operation of an automobile. The provisions of this Subsection shall not prohibit an insurer from increasing the cost of the insured's premium based on the number of claims submitted under his or her policy for damage incurred or arising from the operation of an automobile. For the purposes of this Subsection, an incident shall be deemed a claim only when there is a demand for payment under the terms of the policy. A report of loss or a question relating to coverage shall not independently establish a claim.
§ 636.2. Property, casualty, and liability insurance policies; cancellation and nonrenewal provisions; nonrenewal for rate inadequacy; certain prohibitions
A. (1) Any insurer cancelling or refusing to renew a policy providing property, casualty, or liability insurance on any property shall, upon written request of the named insured therein, mailed or delivered to the insurer within six months after the effective date of cancellation or expiration, specify in writing the reason or reasons for such cancellation or refusal to renew.
(2) There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for cancellation as required by this Subsection.
(3) Any nonrenewal for which the reason, in whole or in part, is inadequacy or insufficiency of the rate or premium for coverage shall be permitted only after the insurer has sought actuarily [sic] justified rate relief from the Louisiana Insurance Rating Commission[2] and such *68 rate relief has been rejected by the commission.[3]
B. There shall be no liability on the part of and no cause of action of any nature shall arise against the commissioner of insurance or against any insurer, its authorized representative, its agents, its employees, or any firm, person or corporation furnishing to the insurer information as to reasons for cancellation or refusal to renew, or in any other communication, oral or written, specifying the reasons for cancellation or refusal to renew, or the providing of information pertaining thereto, or for statements made or evidence submitted at any hearings conducted in connection therewith.
C. No insurer providing property, casualty, or liability insurance shall cancel or refuse to issue or fail to renew a homeowner's policy solely on the basis that the insured owns or possesses an all-terrain vehicle (ATV). The provisions of this Subsection shall not prohibit an insurer providing property, casualty, or liability insurance from specifically excluding coverage for damage incurred or arising from the operation of an all-terrain vehicle.
D. No insurer providing property, casualty, or liability insurance shall cancel or fail to renew a homeowner's policy of insurance or to increase the policy deductible that has been in effect and renewed for more than three years unless based on nonpayment of premium, fraud of the insured, a material change in the risk being insured, two or more claims within a period of three years, or if continuation of such policy endangers the solvency of the insurer. This Subsection shall not apply to an insurer that ceases writing homeowner's insurance or to policy deductibles increased for all homeowners' policies in the state. For the purposes of this Subsection, an incident shall be deemed a claim only when there is a demand for payment by the insured or the insured's representative under the terms of the policy. A report of a loss or a question relating to coverage shall not independently establish a claim.
§ 636.6. Homeowner's insurance; cancellation, nonrenewal
A. An insurer that has issued a policy of homeowner's insurance shall not fail to renew the policy unless it has mailed or delivered to the named insured, at the address shown in the policy, written notice of its intention not to renew. The notice of nonrenewal shall be mailed or delivered at least thirty days before the expiration date of the policy. If the notice is mailed less than thirty days before expiration, coverage shall remain in effect under the terms *69 and conditions until thirty days after the notice is mailed or delivered. Any earned premium for the period of coverage extended beyond the expiration date shall be considered pro rata based upon the rate of the previous year.
B. The notice of nonrenewal shall not be required if the insurer or a company within the same insurance group has offered to issue a renewal policy, or if the named insured has provided written notification to the insurer of the intention of the insured not to renew.
Reading all of these quoted statutes in pari materia or individually, I find no provision that indicates that State Farm did not properly nonrenew according to law Mr. Collins' homeowner's policy of insurance. The notice of nonrenewal was transmitted to Mr. Collins and his mortgagees more than thirty days before the policy was to expire for nonrenewal. Nothing in the statute requires that Mr. Collins or the mortgagees receive notice of the notice of the nonrenewal. The jurisprudence cited by the majority addressing non-receipt by the insured relates to an earlier day before many of the above cited statutes were even in effect. The case law is obsolete and the majority's reliance thereon is, in my view, misplaced. No genuine issue of material fact exists. Summary judgment was properly granted by the trial court. La. C.C.P. arts. 966 and 967.
BELSOME, J., dissenting with reasons.
I respectfully dissent from the majority's opinion. The majority acknowledges that State Farm made a prima facie showing that it mailed notice of its intention to nonrenew Mr. Collins insurance policy in compliance with La. R.S.22:636 et seq. Although Mr. Collins and one of his mortgagees claim the notice was not received, the statutes do not require that the notice be received for the nonrenewal to be valid. More specifically, La. R.S. 22:636.6 titled "Homeowner's insurance; cancellation, nonrenewal" states in pertinent part:
A. An insurer that has issued a policy of homeowner's insurance shall not fail to renew the policy unless it has mailed or delivered to the named insured, at the address shown in the policy, written notice of its intention not to renew. The notice of nonrenewal shall be mailed or delivered at least thirty days before the expiration date of the policy.
Additionally, "[p]roof of mailing of notice of . . . intention not to renew . . . shall be sufficient proof of the notice." La. R.S. 22:636.1(F) (emphasis added)
Even though La. R.S. 22:636(A)(1) states that "[w]ritten notice of . . . cancellation must be actually delivered . . ." (emphasis added), there is no such language attached to the nonrenewal of a homeowner's policy. While consistent language throughout the cancellation and nonrenewal statutes would provide clarity within the law, this Court is bound by the language of the statutes which specifically apply to the policy at issue. Accordingly, I would affirm the trial court's determination.
NOTES
[1] The petition names "State Farm Insurance Company." The proper title for the defendant is "State Farm Fire and Casualty Company."
[2] The correct name of this corporate defendant is Capital One, National Association.
[3] La.R.S. 22:635 A; La.R.S. 22:636 F(1); and La.R.S. 636.1 A.
[4] That judgment was not appealed and is now final and unappealable.
[5] State Farm separately filed its Motion for Summary Judgment and supporting documents in CDC on September 7, 2007.
[6] While the Broadway case was decided under the "cancellation" statute, La.R.S. 22:636, we find no reason in the legislative history of the statutes or by applications of logical principles not to apply this same public policy to the "non-renewal" statute. La.R.S. 22:636.1. See, Ray v. Associated Indem. Corp., 63796 (La.6/25/79), 373 So.2d 166, 169-70; Glynn v. Diamond State Ins., 03-0029 (La.App. 3 Cir. 11/26/03), 864 So.2d 209 at fn. 5.
[7] In Beasley, while the defendant proved he had not received the notice of cancellation mailed by his insurer, the failure of notice was attributable to the defendant by virtue of his refusal to respond to notices from the post office.
[1] Quoted are the versions of the statutes in effect on 30 May 2005. Some of the statutes have been amended since that date and the amendments are not retroactive, primarily because no law (by virtue of the Louisiana and United States Constitutions) can alter existing contracts.

La. R.S. 22:1455, relative to policyholders' rights, provides:
The following items exist in Louisiana statutes and shall serve as standards for a policyholder bill of rights and do not create additional causes of actions or further penalties not otherwise provided under Louisiana statutes:
(1) Policyholders shall have the right to competitive pricing practices and marketing methods that enable them to determine the best value among comparable coverage in accordance with R.S. 22:1214.
(2) Policyholders shall have the right to insurance advertising that is not false and other selling approaches that provide accurate and balanced information on the benefits and limitations of a policy in accordance with R.S. 22:1214.
(3) Policyholders shall have the right to an insurance company that is financially stable.
(4) Policyholders shall have the right to be treated fairly and be free from unfair or deceptive acts or practices in accordance with R.S. 22:1211 et seq.
(5) Policyholders shall have the right to receive service from competent, honest insurance producers that will answer their questions promptly.
(6) Policyholders shall have the right to receive the appropriate disclosure form as an insert in the front of the policy that complies with R.S. 36:696 and R.S. 22:1477.
(7) Policyholders shall have the right to balanced and positive regulation by the Department of Insurance.
(8) Policyholders shall have the right to check the license status of an insurance company, producer, or adjuster.
(9) Policyholders shall have the right to receive written notice of cancellation or nonrenewal at least thirty days prior to the effective date of the cancellation or nonrenewal, unless the cancellation or nonrenewal is for non-payment of premium and shall have the right to protection from improper cancellation or nonrenewal in accordance with R.S. 22:635.3 and 636. 2.
(10) Policyholders shall have the right to receive in writing the reason for any cancellation or nonrenewal of coverage. The written statement must provide an explanation for the cancellation or nonrenewal of coverage.
(11) Policyholders shall have the right to cancel their policy and receive a refund of any unearned premium. If a policy was funded by a premium finance company, the unearned premium will be returned to the premium finance company to pay toward the policyholder's financing loan.
(12) Policyholders shall have the right to a written notification detailing any change in policy provisions at renewal.
(13) Policyholders shall have the right to receive payment of the amount of any property damage claim, or a portion of the claim, due or a written offer to settle any property damage claim within thirty days after receipt of satisfactory proof of loss in accordance with R.S. 22:658 and R.S. 22:1220. If a claim is denied, policyholders shall have the right to receive a written explanation as to the reason for denial, in whole or in part, of any claim made under their policy of insurance.
(14) Relative to first party property damage claims, policyholders shall have the right to request and receive from the insurance company any estimates, bids, plans, measurements, drawings, engineer reports, contractor reports, statements or documents that are not legally privileged that the insurance company prepared, had prepared, or used during its adjustment of the policyholder's claim. A company may keep confidential adjuster notes, logs, and any documents prepared in conjunction with a fraud investigation.
(15) Policyholders shall have the right to file a complaint against any insurance company, producer, or adjuster with the Department of Insurance, and have that complaint investigated by the department.
(16) Policyholders shall have the right to a readable policy, to receive a complete property insurance policy, and to request a duplicate or replacement policy as needed.
(17) Policyholders shall have the right to the remedies provided for in R.S. 22:658 if an insurer violates that Section in the handling of the claim. [Emphasis added.]
This statute, which was added by Acts 2007, No. 222, has no substantive effect or application by its literal terms.
[2] Sections 4 of Acts 2007, No. 459 provides:

Section 4. Except as provided in this Act, the Louisiana State Law Institute is hereby authorized and requested to change all references in the Louisiana Revised Statutes of 1950 to the Louisiana Insurance Rating Commission, whether referred to as the "Louisiana Insurance Rating Commission", "Insurance Rating Commission", "rating commission", or "commission", to the commissioner of insurance. Except as provided in this Act, the Louisiana State Law Institute is hereby further authorized and requested to change all other references in the Louisiana Revised Statutes of 1950 to the office of property and casualty, whether referred to as the "office of property and casualty of the Department of Insurance", "office of property and casualty", or "office", to the commissioner of insurance, with the exception of R.S. 22:8(A) and R.S. 36:688.
Pursuant to § 4 of Acts 2007, No. 459 and the statutory revision authority of the Louisiana State Law Institute, "commissioner of insurance" was substituted for "Louisiana Insurance Rating Commission", and "rejected by the commissioner" was substituted for "rejected by the commission" in par. (A)(3).
[3] Id., footnote 2.