446 So.2d 1246 (1984)
Dorothy Landry, Wife of/and Norman J. LANDRY
v.
ST. CHARLES INN, INC., and Aetna Insurance Company.
No. CA-0774.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
*1247 Levy, Marx, Lucas, & Rosen, William W. Rosen, New Orleans, for plaintiffs-appellees.
Jones, Nabonne & Wilkerson, Walter J. Wilkerson, New Orleans, for defendant-appellant.
Schafer & Shafer, Ralph J. Aucoin, New Orleans, for defendants-appellants, St. Charles Inn, Inc. and Aetna Insurance Company.
Before GARRISON, AUGUSTINE and BYRNES, JJ.
*1248 AUGUSTINE, Judge.
Mrs. Dorothy Landry instituted this action for damages against St. Charles Inn, Incorporated and Project Square 376, a partnership, alleging that the defendants were negligent in not preventing an assault upon her by an unknown assailant in the hotel's parking lot. The case was tried to a jury, who rendered a verdict in favor of the plaintiff in the amount of $20,000.00. Both defendants now appeal.
The factual allegations which gave rise to this litigation are these:
In November of 1979, Mr. Norman Landry, a cancer patient from Alexandria, Louisiana, travelled to New Orleans with his wife Dorothy for treatment at Touro Infirmary. Mr. Landry was admitted to the hospital on November 18th. That same day, Mrs. Landry took lodging in the St. Charles Inn, a small hotel located within walking distance of the hospital.
The hotel, operated by St. Charles Inn, Inc., occupies part of a three-story red brick structure in the 3600 block of St. Charles Avenue. Other parts of the building are occupied by a bar known as Que Sera and the Audubon Federal Savings and Loan Association. The building itself is owned by Project Square 376, a partnership whose other interests include ownership and operation of a parking lot which sits adjacent to the building. The lot is open to the public between the hours of 9:00 a.m. and 5:00 p.m., during which time a service attendant is present.
The hotel's occupancy of the building is pursuant to a lease from Project Square; the lease also includes the land occupied by the adjacent parking lot. It is upon this lot that the attack upon Mrs. Landry allegedly took place.
At about seven o'clock on the morning of November 20, 1979, Mrs. Landry was in the lobby of the hotel, about to make the short trip to Touro Infirmary. She paused to inquire of the desk attendant whether it would be safe to walk to the hospital alone at that hour of the morning. The attendant assured her that she would be alright, and so she left the building following a route which took her across the previously mentioned lot. When Mrs. Landry was about half-way across the lot, she heard footsteps coming from behind and turned to see an unknown man running toward her. Her flight was futile. The much younger attacker caught Mrs. Landry, and when she resisted, he threw her to the ground and snatched her purse forcibly. The assailant then escaped through an alley which runs alongside the hotel.
Although Mrs. Landry was not physically injured as a result of this assault, she contends that she was subjected to great stress and fright, and that her experience of such violence has caused lasting emotional damage.
In support of her claim, Mrs. Landry introduced the deposition of Dr. Wayne Keller, a psychiatrist who testified that as a result of the pursesnatching, Mrs. Landry developed certain phobias, namely, an irrational fear of being attacked in parking lots and of entering her house alone when no one has been there. Dr. Keller also reported that the plaintiff's anxieties have caused insomnia and nightmares. He recommended that Mrs. Landry attend psychiatric counselling once a week for six months.
For whatever reason, Mrs. Landry did not pursue psychotherapy. She did state, however, that she has read certain self-help books recommended to her by Dr. Keller, and that these books have helped her to cope with anxiety, at least to the extent that she no longer has nightmares about the pursesnatching. Despite that improvement, however, Mrs. Landry stated that her fears of being attacked in parking lots and of going into her house alone persist.
As to other items of damage alleged, Mrs. Landry itemized and evaluated the property stolen from her as follows:
1. One 14-carat gold charm bracelet with eight gold charms$500.00.
2. Two gold wedding bands, each $150.00.
3. One Bulova Accutron watch$175.00.
4. One gold Tulane class ring$400.
*1249 5. One gold Rotary Club president's ring with .10-carat diamond$235.00.
6. One pair of 18-carat gold and topaz cuff links$500.00.
7. Gold pocket knife$20.00.
8. One 14-carat gold cocktail ring containing thirteen small diamonds$1,615.00.
9. Pen and pencil set with gold bands $200.00.
10. One 14-carat gold 60" chain with pearl $3,735.00.
11. One 14-carat cluster ring with four diamonds, .90-carats each$12,500.00.
Mrs. Landry's personal opinion was the only evidence as to the value of the first nine items mentioned above. Regarding the last two pieces of jewelry, however, the plaintiff offered the appraisal of an expert witness, a jeweler named Jonas Hiller. Mr. Hiller stated that he was the maker of Mrs. Landry's cluster ring, described as fourteen-carat white gold, containing four .90 carat round diamonds, adjoined to a second ring of fourteen carat yellow gold. Hiller appraised the fair market value of this piece at $12,500.00.
On the basis of a description given to him by Mrs. Landry, Hiller also appraised her 60-inch gold rope saut collier with a slide and twist containing seed pearls. He testified that the article's fair market value is $3,785.00.
On the above facts, the jury returned a verdict in Mrs. Landry's favor and awarded her a "lump sum" of $20,000.00.
We begin our discussion of the merits of this appeal by noting that the relationship between an innkeeper and his guest imports special duties on the part of St. Charles Inn, Inc. which do not burden the other defendant, Project Square 376. We shall therefore analyze the defendants' liability separately.

INNKEEPER'S LIABILITY
In seeking recovery against the hotel operator, St. Charles Inn, Inc., Mrs. Landry relies upon well-settled precedent which regards the relationship between an innkeeper and his guest as a special one, similar to that which exists between a common carrier and a passenger. The innkeeper is thus required to exercise a high degree of care in order to protect his guests against the tortious acts of third persons. Kraaz v. LaQuinta Motor Inns, Inc., 410 So.2d 1048 (La.1982). See also Restatement of Torts (Second), § 314A.
Mrs. Landry contends that, given the frequency of criminal assault in the immediate vicinity of the hotel, the St. Charles Inn failed in its duty to protect her by not providing her any form of security whatsoever as she walked across the parking lot. Police records introduced into evidence at trial of this matter show no less than seven robberies or assaults to have occurred in the immediate area during the year preceding this incident. The defendant, St. Charles Inn, conceded that as of the time of the attack upon the plaintiff, there were no security guards on the premises, no fences to insulate hotel guests from the general public, no cameras to allow hotel employees to monitor activity in the lot; indeed, there were no security precautions of any kind whatsoever.
With respect to the issue of liability, St. Charles Inn's sole contention is that the pursesnatching did not occur on the hotel's premises, and that since there is no precedent for imposing upon an innkeeper the duty to protect his guests against off-premises assault, there can be no liability on its part in this case.
St. Charles Inn maintains, first, that the assault took place on a Foucher Street sidewalk, outside the perimeter of the hotel parking lot.
In response to this, we note that the plaintiff's sworn testimony was explicit and forceful in defining the site of the attack as the parking lot adjacent to the St. Charles Inn. The only contradiction was that contained in the police report of New Orleans police officer David Talley, who investigated the crime shortly after it occurred. His written account (which purports to contain Mrs. Landry's own statements regarding *1250 the incident) places the attack on Foucher Street, away from the hotel's grounds.
The plaintiff denied having made such statements to Officer Talley, however, and it is evident from the verdict that the jury accorded more credibility to Mrs. Landry's in-court, sworn testimony than to the investigating officer's report. Such determinations of credibility are not to be disturbed unless manifestly erroneous, and since we find no such error here, we must accept the jury's conclusion that the attack upon Mrs. Landry occurred in the parking lot.
St. Charles Inn maintains, however, that even if the assault occurred in the parking lot, there can be no liability on its part because the hotel's premises do not encompass that area.
We cannot adhere to such a restrictive application of the term "hotel premises". By its own admission, St. Charles Inn leased the adjacent parking lot from Project Square 376 primarily to provide a convenience for its hotel guests, who were allowed to park on the property at no extra charge. By virtue of that lease, the adjacent parking lot became as much a part of the hotel's premises as the hotel rooms themselves. The plaintiff has thus refuted the defendant's sole argument with respect to its liability.
Given the repeated instances of assault that had taken place within the previous year in or around the parking lot, the jury was warranted in finding that St. Charles Inn's failure to provide any security whatsoever constituted a clear breach of the innkeeper's special duty to his guests, and that this breach substantially contributed to the attack upon Mrs. Landry.

LAND OWNER'S LIABILITY
The jury found defendant Project Square 376 to be jointly liable with St. Charles Inn for the injuries suffered by the plaintiff. Project Square now appeals that finding, contending that its status as the owner of the parking lot did not impose upon it the duty to protect Mrs. Landry from assault by third persons. We agree.
It is a well recognized principle of tort law that there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless a special relation exists between the actor and the other which gives the other a right to protection. Restatement (Second) of Torts, § 315. Innkeepers and guests stand in a special relation to each other (hence St. Charles Inn's liability in this case), as do common carriers and their passengers. Landowners, however, do not stand in such a special relation with those who live upon their premises. This should be clear when it is recalled that under Louisiana law, an owner-lessor owes no legal duty to his lessee to protect him from the tortious acts of third persons who claim no right to the leased premises. La.C.C. art. 2703.[1]Gant v. Flint-Goodridge Hospital of Dillard, 359 So.2d 279 (La.App. 4th Cir.1978); Reynolds v. Egan, 48 So. 940 (La.1909); Bright v. Bell, 37 So. 976 (La.1905); Gulf Coal Co. v. Bingaman, 6 La.App. 107 (Orl.1927). It follows that the landowner/lessor in this case (Project Square) owes no such duty to his lessee's guest (Mrs. Landry). Therefore, under general tort law, Project Square does not share liability with St. Charles Inn.
In the alternative, plaintiff contends that St. Charles Inn, Inc. was merely the corporate alter ego of Project Square 376, and that because of the pervasive intertwining of their operations, management, and interests, Project Square is also culpable for the injuries suffered by Mrs. Landry.
Plaintiff emphasizes that the four individuals who comprise the Project Square partnership are the same persons who, together, hold almost all the stock of St. Charles Inn, Inc. Plaintiff regards it as especially probative that while Mr. Ed *1251 Christiansen managed the hotel for the corporation, he also managed the parking lot on behalf of the partnership.
It is fundamental that a corporation is a legal entity separate and distinct in identity from the members who compose it. La.C.C. art. 435; Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929). Only exceptional circumstances warrant the radical remedy of "piercing the corporate veil". Kingsman Enterprises, Inc. v. Bakersfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir.1976); Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir. 1964).
Those "exceptional circumstances" are not present in this case, for it is well established that courts will not deprive several corporations of their distinct identities merely because those corporations have stockholders and officers in common. Adams v. Associates Corp. of North America, 390 So.2d 539 (La.App. 3rd Cir. 1980); Fletcher Cyc. Corp. 28, p. 332; 18 C.J.S. Corporations, 5j. Absent additional evidence (e.g., of failure to keep separate accounting records, or of failure to observe corporate formalities, or of undercapitalization or insolvency, or of control by one corporation of the affairs of another), there is no justification for piercing the corporate veil. See Hock v. Sea Camper of New Orleans, Inc., 419 So.2d 1315 (La.App. 4th Cir.1982); Kingsman Enterprises, Inc. v. Bakerfield Electric Co., supra.
The plaintiff has offered no such additional evidence to warrant the finding that St. Charles Inn, Inc. and Project Square 376 were the same entity. Accordingly, the liability of Project Square 376 in this case is to be determined solely by its status as the owner of the premises. As we have already held, that status imposes upon Project Square no special duty to protect any person against the tortious conduct of a third party.

EVIDENTIARY ISSUES
During trial of this matter, Mrs. Landry enumerated and described the various items which were stolen during the robbery. Over objection by defense counsel, plaintiff was allowed to state her personal opinion as to the value of several pieces of jewelry which, according to her, had a total value of approximately $25,000.00.
St. Charles Inn, Inc. now contends that the jury's award of $20,000 to the plaintiff cannot be maintained because it was based, in part, upon Mrs. Landry's objectionable testimony. St. Charles Inn, Inc. argues that such valuations can be given only by expert witnesses and that lay testimony on the subject, being in the nature of an opinion, is inadmissible.
We do not share appellant's view that the plaintiff's valuation of her jewelry was inadmissible opinion testimony. It is widely recognized that an owner of personal property is ordinarily qualified, by reason of his presumed familiarity with the object, to testify as to its value. Dumas v. Grain Dealers Mutual Insurance Co., 204 So.2d 120 (La.App. 2d Cir.1967); Berkshire Mutual Insurance Co. v. Moffett, 378 F.2d 1007 (5th Cir.1967); Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690 (5th Cir.1975); Meredith v. Hardy, 554 F.2d 764 (5th Cir.1977); also see cases cited at C.J.S. Evidence, 546 (116). As stated in Kestenbaum, supra, whether the owner's opinion is accurate is a matter for cross-examination and goes to the weight of the evidence, not its admissibility. Id. at 699.
Most of the jewelry and other items stolen from Mrs. Landry were her own,[2] and since there was sufficient evidence of her familiarity with the objects which she valuated, we find no error in the trial court's allowing her to testify as to these matters.

QUANTUM
St. Charles Inn, Inc. contests the jury's award, arguing that the jury did not *1252 return with the required number of votes to sustain a verdict as to quantum.
The record reveals that among the several interrogatories submitted to the jury for deliberation was the following:
"7. If your answer to questions five and six are `No', you must find for the plaintiff and you must make an award `in money' to her. What amount do you award to the plaintiff?
 $______________"
After the jury had apparently completed its deliberation, the foreman tendered to the court the jury's answers to the various interrogatories. The blank in Interrogatory No. 7, supra, was filled in: "$20,000."
The court then conducted a final poll. The transcript of this proceeding reveals that only eight of the jurors voted in favor of the $20,000 sum, and that four jurors voted against it. It is apparent that neither the trial judge nor the defense attorneys noted the one-vote deficiency, for immediately after the poll (and without objection) the trial court stated:
"Let the record reflect that the votes toward the plaintiff, twenty thousand dollars is nine yes and three no."
The verdict was then officially recorded.
Louisiana Code of Civil Procedure Art. 1795 provides:

In order to render any verdict, nine of the jurors must concur therein. The parties may stipulate, however, that the concurrence of a stated majority of the jurors shall be sufficient for a verdict, and must do so when they have stipulated for a trial by a lesser number in accordance with Article 1761. (Emphasis added).
Given the clear expression of the above article, the jury's award, being supported by only eight votes, should not have been recorded as part of the final verdict. We consider that error to have been harmless, however, for if we were to disregard the award and conduct a de novo review on the question of damages,[3] we would be inclined to render judgment in excess of $20,000.00. We decline to increase the plaintiff's recovery only because doing so would penalize the defendant for having raised a legitimate issue. Under these circumstances, the defendant cannot be heard to complain that the jury's verdict was deficient by one vote.
For the reasons assigned, the judgment of the lower court with regard to the defendant St. Charles Inn, Inc. is affirmed in all respects. The judgment of liability on the part of Project Square 376 is hereby reversed and vacated.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Art. 2703: The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance.
[2] Some of the items stolen which belonged to Mr. Landry: his college ring, Rotary Club ring, watch, and pen set.
[3] The Louisiana Constitution invests the lower courts of appeal in this State with jurisdiction to decide questions of law and fact. La. Const. of 1974, Art. 5, § 10. This constitutional provision is implemented by the Louisiana Code of Civil Procedure which defines the scope of review of courts of appeal as follows:

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." Art. 2164.
This article was intended to embody the articles of the Code of Practice of 1870 which, while referring specifically to the Supreme Court, applied as well to the lower courts of appeal. The two Code of Practice Articles had provided as follows:
"Art. 905. When the Supreme Court reverses the judgment of an inferior court, it shall pronounce on the case the judgment which the lower court should have rendered, if it be in possession of all the facts and testimony to enable it to pronounce definitively."
"Art. 906. But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law."
Louisiana jurisprudence has interpreted these constitutional provisions to mean that, notwithstanding a civil litigant's statutory right to trial by jury, where a finding of fact is interdicted because of some legal error in the fact finding process and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); American Machinery Movers, Inc. v. Continental Container Service, Inc., 436 So.2d 1289 (La.App. 4th Cir.1983).