ROSEMARY LEDET, Judge.
_J_jThis is an insurance agent negligence case coupled with an insurance coverage dispute. The insured, Edward Collins, brought this suit against his insurer, State Farm Fire and Casualty Company (“State Farm”),[1] and his insurance agent, Reggie Glass. From the trial court’s judgment granting Mr. Glass’ motion for summary judgment. Mr. Collins appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In January 2000, Mr. Collins filed a claim under his homeowner’s policy with State Farm for roof damage to his property located at 7508 Lafourche Street in New Orleans, Louisiana. State Farm adjusted the claim and paid the damages due under the policy. In September 2004, Mr. Col *989 lins submitted another claim under his homeowner’s policy. During its investigation of this claim, State Farm discovered that Mr. Collins failed to repair his roof after he was paid for his 2000 claim. State Farm thus decided not to renew Mr. Collins’ homeowner’s policy when it expired on May 30, 2005. On April 27, 2005, State Farm sent a notice of nonrenewal to Mr. Collins and his mortgagees. Mr. Collins alleged that he never received a notice of nonrenewal. On or about August 29, 2005, Mr. Collins filed a | ¡.claim under his homeowner’s policy against State Farm for damages his property sustained as a result of Hurricane Katrina.[2] State Farm denied the claim, asserting that there was no longer an effective homeowner’s policy for Mr. Collins’ property as a result of its nonrenewal in May 2005.
On August 28, 2006, Mr. Collins commenced this suit against State Farm and Mr. Glass.[3] In his petition, Mr. Collins alleged that State Farm violated its duties as an insurer by failing to adjust his claim and by denying coverage in bad faith. He alleged that the week before Hurricane Katrina, Mr. Glass, his insurance agent, informed him that he was fully covered with his flood and homeowner’s insurance policy.[4] However, he alleged that after Hurricane Katrina he was informed that his homeowner’s insurance had been dropped without prior written notice. He further alleged that Mr. Glass failed to disclose material information to him causing delay and damage.
During Mr. Collins’ deposition, however, he retracted the allegation contained in his petition that Mr. Glass had informed him he was covered the week before Hurricane Katrina. Instead, he testified that Mr. Glass’ office manager, Linda Jackson, was the one who had misinformed him that he had coverage under his homeowner’s policy. He testified in his deposition as follows:
|iiQ: When was the first time you remember talking with [Mr. Glass] or seeing him face to face?
A: After the hurricane.
Q: You didn’t have any dealings with Mr. Glass personally before Hurricane Katrina?
A: No I didn’t need to.
Q: Had you had any conversations or discussion or any other kind of contact with people who worked in Reggie Glass’ insurance office before the storm?
A: Yes, I have.
Q: Who did you talk with before the storm? Who was at Reggie’s office?
A: Linda Jackson.
[[Image here]]
Q: So, in July, you believe you spoke with Linda Jackson about the coverage on your home?
*990 A: Yes, I don’t believe, I know I did.
Q: All right.
A: I am positive, I did.
Q: And when you spoke with her, was Hurricane Katrina already in the Gulf of Mexico?
A: It was out there in the water. Now, what part of the water, I don’t know but, it was showing up on the radar.
Q: And so, did you discuss your coverages with Ms. Jackson?
A: Ms. Linda Jackson.
Q: And what did she tell you, you had in coverage?
A: She said I had everything that a house is supposed to have. I had the flood insurance. I had the homeowner’s insurance, and I had the personal property, and the injury, and whatever else. She said I had everything that a home should have. That is all I could get on the house.
|4Q: All right. Now, was that the only conversation you had with Ms. Jackson about the insurance coverage on your home before Katrina struck?
A: I had a conversation two weeks before.
Q: Two weeks before?
A: Right. In August.
Q: And what was that discussion about?
A. I wanted to make sure, because when the Mayor said the water is gonna be anywhere from 25-30 feet, I just wanted to make sure that we had everything before we leave our home, and was everything covered. And that is two weeks before the hurricane. And what she did she turned the computer around facing me, showing me, that I had the homeowner’s insurance. And she said, and I quote her word, “Mr. Collins, State Farm is a good company, they won’t screw you around. That ain’t like other companies and they are nationwide.
In Ms. Jackson’s deposition, she testified that she did not recall speaking with Mr. Collins. Further, she testified that the computer system that they used at the time, ECHO, would not display an insurance policy that had been cancelled or non-renewed for more than thirty days. Thus, she contended that Mr. Collins’ story that she turned the computer around and showed him his policy was impossible.
On September 7, 2007, State Farm filed its first motion for summaiy judgment. It contended that it mailed a notice of nonre-newal of the homeowner’s policy to Mr. Collins in compliance with Louisiana law; thus, it contended that it should be dismissed from the lawsuit. On May 6, 2008, the "trial court granted State Farm’s motion for summary judgment. On appeal, this court reversed that judgment and remanded to the trial court. Collins v. State Farm Ins. Co., 08-0790 (La.App. 4 Cir. 10/14/08), 997 So.2d 51. We reasoned that the sworn affidavits from Mr. Collins and one of the mortgagees, Sun Finance Company, Inc., declaring that they did not receive the notice of State Farm’s intention not to renew |sthe policy created a genuine issue of material fact as to whether State Farm’s notice of nonrenewal was effective. Id., 08-0790 at pp. 14-15, 997 So.2d at 59.
On remand, State Farm re-urged its motion for summary judgment. In support, it offered additional evidence of mailing the notice of nonrenewal. The trial court again granted State Farm’s motion for summary judgment. On appeal, this court affirmed; we reasoned as follows:
The statutes that are controlling with respect to the nonrenewal of homeowner’s insurance policies in Louisiana are, La. R.S. 22:636, La. R.S. 22:636.1 *991 and La. R.S. 22:636.6 [footnote omitted]. La. R.S. 22:636 applies generally to property and casualty insurance policies and provides in pertinent part:
G. (1) No insurer shall fail to renew a policy providing property or casualty insurance unless a notice of intention not to renew is mailed or delivered to the named insured at the address shown on the policy at least thirty days prior to the effective date of nonrenewal. La. R.S. 22:636(G)(1) (emphasis added).
Additionally, La. R.S. 22:636.1, referring to nonrenewal of property and casualty insurance policies specifically, states in part:
E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew.
[[Image here]]
F. Proof of mailing of notice of ... intention not to renew ... to the named insured at the address shown in the policy, shall be sufficient proof of notice.
La. R.S. 22:636.1(E)(1) and (F) (emphasis added).
And lastly, La. R.S. 22:636.6, referring to the nonrenewal of homeowner’s insurance, reads in part:
A. An insurer that has issued a policy of homeowner’s insurance shall not fail to renew the policy unless it has mailed or delivered to the named insured, at the address shown in the policy, written notice of its intention not to renew. The notice of nonre-newal shall be mailed or | (¡delivered at least thirty days before the expiration date of the policy.
La. R.S. 22:636.6(A) (emphasis added).
Louisiana law requires that statutes be applied as written and no further interpretation made in search of the legislature’s intent when the law is clear and unambiguous and its application does not lead to absurd consequences. La. C.C. art. 9. In the present case, the statutes’ language is clear. The mailing of a notice of nonrenewal to the insured’s address, as listed on the policy, at least thirty days before the expiration of the policy satisfies the burden placed upon the insurer. La. R.S. 22:636 et seq. Noticeably absent from the statutes is language requiring the notice of nonre-newal be received in order for it to be effective.
When enacting these statutes, the Legislature specifically distinguished between the standard of notice required for cancellation and that for nonrenewal of insurance policies. More specifically, La. R.S. 22:636(A)(1) relating to cancellation states that, “[wjritten notice of ... cancellation must be actually delivered ...” (emphasis added). The Legislature did not attach such language to the requirements of notice of nonrenewal'.
On remand, State Farm presented the trial court with a Certificate of Mailing Listing authenticated by a team manager’s affidavit. The certificate bore the signature of State Farm Postal Operator Margaret Wynn and U.S. Postal Operator Larry Bailey, Jr., the two persons involved in the mailing of Mr. Collins’ nonrenewal notice. The certificate included the name and addresses for the notice recipients, as well as, copies of the notices. These documents indicated that Mr. Collins and his first and second mortgage holders were sent nonrenewal notices on April 27, 2005.
In further verification and support of the Certificate of Mailing Listing, State Farm took the depositions of Ms. Wynn and Mr. Bailey. Ms. Wynn identified *992 her signature on the Certificate of Mailing Listing. She also testified that it was her responsibility to place the non-renewal notice in an envelope, place postage on the envelope and hand deliver the mailings to the post office.
At the post office, the employee of the U.S. Postal Service would sign the certificate to verify receipt and mailing of the notices. Mr. Bailey, the postal employee, testified that his signature was on the certificate and that meant that he had checked the envelopes against the list of recipients and accepted the envelopes for mail delivery. Once State Farm established mailing as required by the applicable statutes, the burden shifted to Mr. Collins. Since receipt of the nonrenewal notice |7is not required by law, the mere denial of receipt cannot create a genuine issue of material fact under these circumstances.
This evidence introduced by State Farm satisfied its burden of proof under La. R.S. 22:636 et seq. Accordingly, the trial court’s ruling is affirmed.
Collins v. State Farm Ins. Co., 10-0769, pp. 3-5 (La.App. 4 Cir. 1/26/11), 69 So.3d 481, 483-84, writ denied, 11-0378 (La.4/8/11), 61 So.3d 689.
On November 27, 2013, Mr. Glass filed a motion for summary judgment.[5] During the hearing on the motion for summary judgment, the trial court orally granted the motion, stating:
The Court has noted the very long and tortured history of this case that has gone on for some, I guess eight years now, a minimum of eight years. But for purposes of today’s motion, as a matter of law I have to find that Mr. Glass cannot be held personally liable for Mr. Collins’ damages. I think it’s been conclusively shown as a matter of law that Ms. Linda Jackson was an employee of the Reggie Glass Insurance, Inc. There’s a very strong public policy consideration in the State of Louisiana that corporate veils will not be pierced, and as in certain circumstances proven. In this particular instance I don’t think they’re relevant.
So for that basis I will grant your motion. I don’t think I need to speak to anything else.
On February 11, 2014, the trial court signed a judgment granting Mr. Glass’ motion for summary judgment. This appeal followed.
STANDARD OF REVIEW
The standard of review of a trial court’s ruling granting a motion for summary judgment is well settled. This court summarized the standard of review as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This | ¡^standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable per *993 sons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
ChapitaI v. Harry Kelleher & Co., Inc., 13-1606, pp. 5-6 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 81-82 (quoting Mandina, Inc. v. O’Brien, 13-0085, p. 9 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 104-05).[6]
DISCUSSION
|flOn appeal, Mr. Collins contends that the trial court erred in awarding summary judgment to Mr. Glass for two reasons: (i) Mr. Glass breached his duty to inform Mr. Collins of State Farm’s decision not to renew his homeowner’s insurance policy and thus committed fraud; and (ii) Mr. Glass is personally liable for the negligent misrepresentation of his employee, Ms. Jackson, and Mr. Collins can prove at trial all of the elements of negligent misrepresentation.

(i) Duty of the Insurance Agent and Fraud

Mr. Collins contends that Mr. Glass knew or should have known that delivery of the nonrenewal notice was not required. He thus contends that Mr. Glass had a duty to inform Mr. Collins of State Farm’s decision not to renew his homeowner’s policy when it made this decision in September 2004. Mr. Collins further contends that when he went to Mr. Glass’ office in July of 2005, Mr. Glass should have informed him of the nonrenewal. Mr. Collins contends that it was hurricane season and that there would have been no reason for him to visit Mr. Glass’ office except to discuss his insurance coverage. Mr. Collins thus alleges that by failing to disclose this material information, Mr. Glass committed fraud.
Mr. Glass counters that neither the Louisiana Insurance Code nor the Louisiana jurisprudence recognizes such a duty. Rather, Mr. Glass contends that the Insurance Code requires the non-renewing insurance company to notify the insured of nonrenewal. Mr. Glass further contends that according to the Louisiana jurisprudence, insurance agents do not have a duty to advise clients when they are underin- *994 sured. In support, he cites Cameron Parish Sch. Bd. v. State Farm Fire & Cas.Co., 560 F.Supp.2d 485, 489 (W.D.La.2008). Mr. Glass thus contends that he did not commit fraud by failing to inform Mr. Collins of the nonrenewal of his homeowner’s policy. Further, Mr. Glass contends that fraud has to be plead with | ^particularity. He notes that Mr. Collins never raised the allegation, much less with particularity.
The Louisiana Supreme Court held that an insurance agent owes a duty of “reasonable diligence” to his customer. Isidore Newman Sch. v. J. Everett Eaves, Inc., 09-2161, p. 7 (La.7/6/10), 42 So.3d 352, 356. The duty of “reasonable diligence” is fulfilled when the agent procures the insurance requested. Id. As to whether the insurance agent’s duty of “reasonable diligence” includes the duty to notify a customer of an insurer’s decision not to renew an insurance policy, we look to the statutes and jurisprudence.
The procedures for the cancellation or non-renewal of a customer’s insurance policy are set forth in La. R.S. 22:636[7] and 22:636.1. In particular, La. R.S. 22:636(H) provides: “[njotice of cancellation or nonrenewal given by the insurer in accordance with this Chapter shall be deemed sufficient. The insurance producer, insurance agent, or insurance broker shall not be required to give any separate or additional notice of cancellation or non-renewal.” See Collins v. State Farm Ins. Co., 08-0790, p. 6 (La.App. 4 Cir. 10/14/08), 997 So.2d 51, 63. The Louisiana Civil Code requires that statutes be applied as written and no further interpretation be made in search of the legislature’s intent when the law is clear and unambiguous and its application does not lead to absurd consequences. La. C.C. art. 9. This statute is clear. The insurance agent has no additional or independent duty to inform the insured of the insurer’s decision not to renew. Thus, Mr. Glass had no duty to inform Mr. Collins of State Farm’s decision not to renew his homeowner’s insurance policy in September 2004 or thereafter.
In Although Mr. Collins contends that Mr. Glass should have at least informed him of State Farm’s notice of nonrenewal when Mr. Collins’ visited his office in July 2005, Mr. Collins himself admitted, in his deposition, that he had never seen Mr. Glass before Hurricane Katrina, which occurred in August 2005. Thus, even assuming Mr. Collins went to Mr. Glass’ office in July 2005, it is undisputed that Mr. Collins did not see Mr. Glass.
Contrary to Mr. Collins’ contentions, Mr. Glass did not commit fraud. “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” La. C.C. art. 1953. In order to bring a cause of action for fraud, the following three elements must be alleged: “(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.” Chapital v. Harry Kelleher & Co., 13-1606, p. 13 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 86. Moreover, fraud must be alleged with particularity. La. C.C.P. art. 856 (providing that “[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity”). Id., 13-1606 at pp. 13-14, 144 So.3d at 86. Even assuming Mr. Collins had alleged *995 fraud with particularity, there is no evidence of fraud by Mr. Glass in the record. There is no evidence that Mr. Glass misled or misrepresented a material fact to Mr. Collins with an intent to deceive in any way.

(ii) Negligent Misrepresentation

11PMr. Collins contends that he spoke with Ms. Jackson on two occasions: July of 2005 and one to two weeks before Hurricane Katrina made landfall.[8] He contends that on both occasions Ms. Jackson incorrectly informed him that he had homeowner’s insurance coverage when he did not. He contends that if she had not made these misrepresentations, he could have obtained insurance from other sources before August 26, 2005, when a ban was placed on all new insurance in the New Orleans area. Mr. Collins contends that, at the very least, he could have rented a U-Haul and removed his contents from his home in order to save his movable property.
Before addressing the merits of Mr. Collins’ negligent misrepresentation claim, we first address whether Mr. Glass can be held personally liable for Ms. Jackson’s alleged actions.[9] According to La. R.S. 12:98(B), a shareholder is not liable for the debts of his corporation. This statute is founded on the theory that “the corporation is itself considered a juridical entity, possessing its own legal personality, separate and distinct from that of its shareholders.” New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 09-1433, p. 19 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 406 (citing Wendell H. Holmes and Glenn G. Morris, 8 La. Civ. L. Treatise, Business Organizations, § 32.02). This court has maintained that a person may form a corporation for the sole or primary purpose of avoiding personal liability. Kirksey, 09-1433 at p. 19, 40 So.3d at 406 (citing Bridges v. AutoZone Properties, Inc., 04-0814, p. 19 (La.3/24/05), 900 So.2d 784, 797); see also La. R.S. 12:21.[10]
At the motion for summary judgment hearing, Mr. Glass proved that Ms. Jackson was employed by the corporation, not by Mr. Glass personally. Mr. Glass introduced a corporate entity document from the Louisiana Secretary of State that confirmed the existence of the corporation entitled “Reggie Glass Insurance Agency, Inc.” Mr. Glass also introduced a sworn affidavit, in which he attested that he was the owner and president of Reggie Glass Insurance Agency, Inc. This evidence was sufficient to prove that Mr. Glass operated a corporation which employed Mr. Jackson, and therefore Mr. Glass cannot be personally hable for Ms. Jackson’s alleged actions. Nonetheless, Mr. Collins contends that Mr. Glass is personally liable under either of the following two theories: (a) judicial confession; and (b) piercing of the corporate veil. We separately address each theory.

(a) Judicial Confession

Mr. Collins contends that Mr. Glass is personally liable for Ms. Jackson’s actions because he judicially confessed that he acted as an agent in his own name and employed Ms. Jackson in that capacity. Thus, Mr. Collins contends that Mr. Glass is now precluded from asserting that Ms. Jackson worked for the corporate entity, *996 Reggie Glass Insurance Agency, Inc. Specifically, Mr. Collins contends that Mr. Glass judicially confessed that he acted in his own name, rather than the name of the corporation, when he swore in an affidavit “[t]hat he is a self-employed, independent agent of State Farm Insurance Company;” Mr. Collins further contends that Ms. Jackson and Mr. Glass’ deposition testimony contradicts that |T4they were working under a corporation. Specifically, Mr. Collins contends that Ms. Jackson testified that from 1991 to 2005 she personally worked for a self-employed independent contractor of State Farm, Reggie Glass, and not Reggie Glass Insurance Agency, Inc. Moreover, Mr. Glass testified that Ms. Jackson was his office manager for seven years and a previous team member employee in the agency for 18 years.
Mr. Glass counters that he did not make a judicial confession that he was a sole proprietor who personally employed Ms. Jackson. He contends that there was no express acknowledgment of an adverse fact charged against him by his adversary, as required for a judicial confession under Louisiana law. In support, he cites First Homestead Federal Sav. And Loan Ass’n v. Coleman, 446 So.2d 551 (La.App. 3rd Cir.1984). He also contends that the affidavit was an acknowledgment that Mr. Glass was not a State Farm adjustor. According to Mr. Glass, this is a fact entirely consistent with him owning and presiding over a small business corporation. Lastly, Mr. Glass contends that their deposition testimony that Ms. Jackson worked for him does not rise to the level of an explicit admission of an adverse fact.
A judicial confession is “a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it-” La. C.C. art. 1853. This court has held that “[a] judicial confession is a party’s explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject matter of the confession from issue.” Newman v. George, 07-0620, p. 4 (La.App. 4 Cir. 9/26/07), 968 So.2d 220, 223. This court has further held that “[i]t is well-settled that a judicial confession or admission |iSmust be explicit, not merely implied.” Pendleton v. Smith, 95-1805, p. 5 (La.App. 4 Cir. 5/8/96), 674 So.2d 434, 439-40.
 Here, Mr. Glass did not explicitly admit an adverse fact in a judicial proceeding. Rather, Mr. Glass attested to the fact that he was not a claims adjustor or a State Farm employee in his pleadings, motions, and affidavits before this court. Further, in his deposition, Mr. Glass testified that Ms. Jackson worked for the agency and was his office manager. This is not an explicit admission that he acted as an agent in his own name and that he did not act under a corporation. Still further, Ms. Jackson’s deposition testimony simply states that she worked for Mr. Glass, who was an independent agent for State Farm. There is nothing that prevents an independent agent from operating under a corporation. As stated above, a judicial admission must be explicit and cannot be implied. Thus, we reject Mr. Collins’ argument that Mr. Glass’ statements acted as a judicial confession,

(b) Piercing of the Corporate Veil

Mr. Collins contends that Mr. Glass’ failure to advise Mr. Collins that he was not insured was fraudulent. Thus, he contends that Mr. Glass’ fraudulent acts require piercing the corporate veil and finding Mr. Glass liable. Mr. Collins also argues that the corporate veil can be pierced under the “alter ego” theory when there has been a disregard of the corporate entity to such an extent that the corporation is indistinguishable from its *997 shareholders. Citing McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet, 95-2087 (La.App. 1 Cir. 6/28/96), 694 So.2d 305, 309. Thus, he argues that even if Mr. Glass and Ms. Jackson were working under a corporation, Mr. Glass is still personally liable because the corporate veil should be pierced.
11fiMr. Glass counters that Mr. Collins did not raise this issue at trial and thus cannot raise it on appeal. Further, Mr. Collins contends that there is no evidence in the record to support piercing the corporate veil — there is no allegation or evidence of fraud, and Mr. Collins has not alleged alter ego or pointed to facts in the record that would support doing so.
As noted above, a corporation is a legal entity separate and distinct from the members who compose it. Landry v. St. Charles Inn, Inc., 446 So.2d 1246, 1251 (La.App. 4th Cir.1984) (citing La. C.C. art. 435 and Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929)). “Only exceptional circumstances warrant the radical remedy of ‘piercing the corporate veil.’ ” Landry, 446 So.2d at 1251. The purpose of allowing plaintiffs to pierce the corporate veil is to hold individual shareholders liable for wrongdoing. Scott v. Am. Tobacco Co., Inc., 04-2095, p. 8 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, 1274. This court has allowed piercing of the corporate veil in situations where fraud or deceit has been practiced by a shareholder acting through the corporation. Id. (citing Riggins v. Dixie Shoring Co., 590 So.2d 1164, 1168 (La.1991)). This court also has allowed- piercing of the corporate veil when shareholders have disregarded the requisite corporate formalities to the extent that the shareholders are no longer distinct from the corporate entity — also known as the “alter ego” doctrine. Id. at 04-2095 at p. 8, 949 So.2d at 1274-75 (citing Gordon v. Baton Rouge Stores Co., 168 La. 248, 121 So. 759 (1929)).
This court has listed the following noninclusive factors that may be considered to determine whether the alter ego doctrine applies: (1) commingling of corporate and shareholder funds, (2) failure to follow statutory formalities for incorporating and transacting corporate affairs, (3) undercapitalization, (4) failure 117to provide separate bank accounts and bookkeeping records, and (5) failure to hold regular shareholder and director meetings. Id., 04-2095 at pp. 8-9, 949 So.2d at 1275.
In this case, we do not find an exceptional circumstance warranting piercing of the corporate veil. As discussed above, the record is devoid of any evidence that would support the allegation that Mr. Glass committed frqud, requiring that the corporate veil be pierced. Still further, nothing in the record supports a finding that Mr. Glass, the sole shareholder, has entirely ignored corporate formalities to such an extent as to require piercing of the corporate veil.
' Because we find that Mr. Glass is not liable for the alleged actions of Ms. Jackson, we do not reach the merits of Mr. Collins’ claim that Ms. Jackson is liable for negligent misrepresentation. We thus find no error in the trial court’s judgment granting Mr. Glass’ motion for summary judgment and dismissing him from the suit.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. State Farm has since been dismissed from this lawsuit.

. Mr. Collins also submitted a claim from Hurricane Katrina under his flood insurance policy with State Farm and was paid $61,500 for these damages by State Farm.

. This suit was removed to federal court and later remanded. While the suit was pending in federal court, the federal district court held that this suit was not perempted under La. R.S. 9:5606. Mr. Collins contends that he did not find out about the alleged misrepresentation until State Farm denied his claim after Hurricane Katrina. Thus, the federal district court held that he filed his action within a year from when he discovered the alleged action, omission, or neglect.

.Mr. Collins filed a supplemental and amending petition adding Hibernia Mortgage Company/ Capital One ("CONA”) to the lawsuit. He alleged that CONA failed to properly notify him of the nonrenewal of his insurance policy. CONA was dismissed by motion for summary judgment after proving that they no longer held Mr. Collins’ mortgage on the date that the property sustained hurricane damage.

. Mr. Glass filed a previous motion for summary judgment while the case was pending in the federal court. The federal court denied that motion.

. The summary judgment law (La.C.C.P. art. 966) has been amended multiple times in the past few years. The amendments are not material to our analysis.

. La. R.S. 22:636 was renumbered as La. R.S. 22:887 by Acts 2008, No. 415, Sec. 1, (effective Jan. 1, 2009).

. Hurricane Katrina made landfall in New Orleans on or about August 29, 2005.

. Ms. Jackson was not a named defendant in this suit. The only defendant remaining in this suit is Mr. Glass.

.La. R.S. 12:21 provides “[o]ne or more natural or artificial persons capable of contracting may form a corporation."